**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**MARIA MARIA A/K/A MARIA ACOSTA**

                                         **Case No.:**

                                         **~~=======~~1:16-cv-08623-VSB**

                        **Plaintiff,**

                   **-against-**

**PRESSLER AND PRESSLER, LLP;**
**SELIP & STYLIANOU, LLP f/k/a COHEN & SLAMOWITZ, LLP;**
**CYPRESS FINANCIAL RECOVERIES, LLC;**
**CAPITAL PROCESS SERVERS, INC; ~~and~~**
**NASSER ATRASH;**
**NEW CENTURY FINANCIAL SERVICES, INC;**
**LVNV FUNDING, LLC;**
**RESURGENT CAPITAL SERVICES, LP**

                        **Defendants.**
-------------------------------------------------------------------X

                   **~~ORIGINAL~~ [PROPOSED]**
               **FIRST AMENDED COMPLAINT AND JURY DEMAND**

      Plaintiff Maria Maria a/k/a Maria Acosta brings suit against Defendants for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., N.Y. Gen. Bus. Law § 349 *et seq*, and N.Y. Jud. § 487.

                      **Summary of Claims**

      Defendants are debt collection law firms Pressler and Pressler, LLP ("Pressler") and Selip & Stylianou, LLP f/k/a Cohen & Slamowitz, LLP ("Stelip"), ~~a~~ putative assignee creditors Cypress Financial Recoveries, LLC ("Cypress") and LVNV Funding, LLC ("LVNV"), ~~LVNV's~~ master debt servicer, Resurgent Capital Services, LP ("Resurgent") (collectively "LVNV"), a process serving company Capital Process Servers, Inc. ("CPS") and its process server Nasser Atrash.

                       1

Defendants Pressler and Selip are debt collection law firms that represented Cypress in connection with a putative consumer debt alleged to be owed by Plaintiff. In 2013, Cypress, through then-attorney Selip, obtained a default judgment against Ms. Maria using a false affidavit of service. The false affidavit of service was executed by Defendant Atrash and caused to be filed by Selip.

Ms. Maria first learned of the collection lawsuit when she saw the judgment listed on her credit report in May, 2015. Ms. Maria promptly moved by order to show cause on May 20, 2015, providing written notice of the same to Cohen & Slamowitz (now Selip & Stylianou) as directed by the Court. At the hearing on the order to show cause on June 3, 2015, the Court set the matter down for a traverse hearing. At the traverse hearing on June 10, 2015 the Court ordered the judgment vacated and the action discontinued.

On or about November, 6 2015, Cypress, through Pressler sent Ms. Maria a collections letter purporting to collect on the judgment. The letter falsely represented that there was a valid judgment against Ms. Maria, and that they could begin judgment enforcement procedures. The letter also misstated the amount of the putative debt, and failed to inform Ms. Maria of her rights to be able to require Cypress and Selip to cease collection and to verify whether the judgment actually existed pursuant to FDCPA 1692(g). The November 6, 2015 demand letter was sent on Pressler's attorney letterhead, falsely implying to the least sophisticated consumer that an attorney had reviewed the facts as to the accuracy of the putative judgment. Pressler send an additional letter on March 15, 2016 containing most of the same misrepresentations. Lastly, Pressler sent an information subpoena on December 18, 2015 containing the most of the same misrepresentations as the November 6, 2015 collection letter. The information subpoena was even more deceptive than the November 6 collection letter. It threatened contempt against Ms.

2

Formatted: Font: 6 pt

Maria if she did not answer the subpoena when that threat was false not only because there was no judgment but also because the subpoena was defectively issued in any event.

The putative judgment was sold from Cypress, to New Century, to LVNV, and collected and executed on by Pressler, with no one along the chain taking any steps to determine whether the default judgment has been vacated. The debt collectors know how common sewer service is in New York, and thus have a reason to believe that some of the judgments collected upon may be vacated. Indeed, the undersigned has sued LVNV more than a dozen times in just the last few years for collecting on vacated judgments, but LVNV apparently still does not require its collection firms such as Pressler to check ecourts to determine whether a judgment it is collecting upon has been vacated.

.

## A.  JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claim within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York County, New York.

## B.    PARTIES

Formatted: Font: 6 pt

3.      Plaintiff Maria Maria a/k/a Maria Acosta ("Ms. Maria" or "Plaintiff") is an individual residing in New York County, New York.

4.      Defendant Pressler and Pressler, LLP is a New Jersey law firm that has its principal place of business in Parsippany, New Jersey 07054.

5.      Pressler regularly collects or attempts to collect, directly or indirectly, debts owed, or due or asserted to be due to another by filing of thousands of collection lawsuits, collecting on thousands of putative judgments, and sending thousands of collection letters.  Pressler is a therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

6.      Pressler regularly transacts business, debt collection, in the State of New York.

7.      Defendant Selip & Stylianou, LLP f/k/a Cohen & Slamowitz is a New York debt collection law firm that has its principle place of business in Woodbury, New York.

8.      Selip & Stylianou regularly collects or attempts to collect, directly or indirectly, debts owed, or due or asserted to be due another by filing thousands of collection lawsuits, collecting on thousands of putative judgments, and sending thousands of collection letters. Selip & Stylianou, is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

9.      Defendant Cypress Financial Recoveries, LLC is a limited liability corporation organized under the laws of the State of New York. Cypress regularly purchases thousands of putative consumer debts after they are in default and files lawsuits to collect on those debts. Cypress is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

10.      Defendant Capital Process Servers, Inc. is a process serving agency organized under the laws of the State of New York. CPS regularly fails to serve summons and complaints and regularly executes false affidavits of service allowing the entry of default judgments against putative debtors. CPS is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

Formatted: Font: 6 pt

11.     Defendant Nasser Atrash is a process server who worked for the process serving agency CPS at the time of the alleged service in the collection lawsuit against Ms. Maria. On information and belief, Atrash resides in the State of New York. Atrash regularly fails to serve summons and complaints and regularly executes false affidavits of service allowing the entry of default judgments against putative debtors. Atrash is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

12.     Defendant New Century Financial Services, Inc. ("New Century") is a foreign business corporation organized under the laws of the State of New Jersey. New Century engages in business in New York. This suit arose out of New Century's business in New York.

13.     Defendant LVNV Funding, LLC ("LVNV") is a limited liability corporation organized under the laws of ~~t~~the State of Delaware. LVNV engages in business in New York. This suit arose out of LVNV's business in New York.

~~11.~~14. Defendant Resurgent Capital Services, LP ("Resurgent") is a limited partnership organized under the law of the state of Delaware. Resurgent engages in business in New York. This suit arose out of Resurgent's business in New York.

## C.  STATEMENT OF FACTS

~~12.~~15. Cypress Financial Recoveries, LLC ("Cypress") is a debt collector that purchases charge-off consumer debts for pennies on the dollar and files thousands of collection lawsuits to collect those alleged debts.

~~13.~~16. On March 1, 2012, Cypress, through its attorney Selip & Stylianou, LLP ("Selip"), initiated a lawsuit against Ms. Maria in New York County Civil Court, styled *Cypress Financial Recoveries, LLC v. Maria Maria AKA Maria D. Acosta*, Index No. CV-006298-12/NY.

**Formatted:** Font: 6 pt

(hereinafter the "collection lawsuit").  *See* Exhibit A.[1]

~~14.~~17.  The complaint alleged that Cypress was successor in interest to HSBC and that Ms. Maria had entered into a credit agreement with HSBC and subsequently defaulted on her monthly payments, incurring a debt of $1,585.96.

**False affidavit of service leads to "sewer service" judgment.**

~~15.~~18.  According to the affidavit of service, the complaint was served on Ms. Maria on or about March 31, 2012. *See* Exhibit B.

~~16.~~19.  The affidavit of service alleges that Ms. Maria was served by leaving a copy of the summons and complaint with "Romando Doe," a person of suitable age and discretion at Ms. Maria's home, and mailing a copy of the summons and complaint to Ms. Maria's residence.

~~17.~~20.  These statements are false. Ms. Maria does not know anyone named Romando, and no one by that name was present in Ms. Maria's home on the day of the alleged service. Ms. Maria never received a copy of the summons and complaint in any manner.

~~18.~~21.  Cypress, through Selip, used the false affidavit of service to obtain a default judgment against Ms. Maria on February 25, 2013 when Ms. Maria inevitably failed to answer the complaint. *See* Exhibit C.

22.    Sewer service problems are well known in New York,[2] and it is readily apparent that

---

1 All exhibits attached to this complaint and documents referenced in this complaint are incorporated by reference in their entirety.

2 For example, Judge Chin recently found::

    I make the following findings of fact based upon the depositions, declarations, and exhibits submitted by the parties in connection with this motion [for class certification]….

    Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. For example, Mosquera claimed to have performed service at four different locations at 1 p.m. on September 17, 2008. Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. Andino claimed to have performed service at nine different locations at 4 p.m. on March 29, 2007. There were also many other occasions where multiple services were purportedly made so

~~PM6/6/2017 2:59 PM~~     ~~Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00~~

**Formatted:** Font: 6 pt

many default judgments are eventually challenged and vacated.  Therefore, Cypress, Selip, and Pressler knew, or should have known, that Ms. Maria's judgment might have been vacated. For the foregoing reasons, among others, the conduct of Cypress, Selip, CPS, and Atrash evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

23.    Further, Selip and, on information and belief, Cyress take no steps to determine whether the process servers they use engage in sewer service despite knowing how widespread the problem of sewer service is in New York, and despite knowing how common it is for them to receive orders to show cause for judgments they enter.

19.

20.24.  The individual process server and the process serving company are notorious for using false affidavits of service that allow the mass entry of "sewer service" judgments.

21.25.  Nasser Atrash has been disciplined for repeatedly executing false affidavits of service and for failing to report traverse hearings to the Department of Consumer Affairs ("DCA"). On January 28, 2014, an Administrative Law Judge for the DCA found that Mr. Atrash executed false affidavits of service in five different cases since 2009. Mr. Atrash's process server's license was revoked and DCA imposed a $30,500 fine. See Exhibit D.

22.26.  Mr. Atrash's record for filing false affidavits of service is reflected in the Nicholas Egleson Declaration, attached as Exhibit E. This declaration was filed in the above referenced case, *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 283-84 (S.D.N.Y. 2012) (see note

---

close in time that it would have been impossible for the process server to travel from one location to the other as claimed.
These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.
*Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 283-84 (S.D.N.Y. 2012) *aff'd sub nom. Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015)(citations to record omitted).

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

1 above). The chart on page 9 reflects Mr. Egleson's finding that on 34 different occasions Nasser Atrash reported serving process at 2 or more locations at the same time.

27.    CPS has also been disciplined by the DCA for violations of DCA rules regulating process servers. In February, 2013, CPS entered into a consent order with DCA whereby CPS paid a $35,000 penalty and was required to adopt policies to protect against sewer service.[3]

*Cypress assigns the (non-existent) judgment to New Century*

In 2014 or 2015, Cypress and New Century contend[4] the (putative) judgment was assigned the judgment to was assigned from the former to the latter, but are inconsistent whether the transfer was before or after the judgment was vacated.

Defendant New Century. The bill of sale produced by Pressler is dated January 29, 2015, but appears to have been signed and notarized in 2014, raising questions about its authenticity.

The Bill of Sale purports to transfer all interest in the judgment to New Century, but specifically disclaims any "representations or warranties, express or implied, of any type, kind or nature."

The bill of sale was signed by Cynthia Talleda, the operations manager for Cypress.

Oddly, Cypress and New Century executed another bill of sale on September 1, 20175. New Century produced that bill of sale in response to Plaintiff's subpoena dated April 24, 2017.

Both bills of sale were made pursuant to a Judgment Purchase Agreement between Cypress and New Century, dated on January 16, 2015.

Pressler alleges that it sent a notice to Ms. Maria on June 1, 2015, informing her that the

---

3 CPS consent order is available at
https://www1.nyc.gov/assets/dca/downloads/pdf/about/sa_Capital_Process_Servers_Inc_1381942.pdf
4 This amended complaint will state that one defendant contends an activity occurred (e.g. a debt assigned on a certain date, or letter sent). Plaintiff does not stipulate that the various statements are correct. However, Plaintiff does refer to these activities as admissions by a party opponent. These admissions support liability, even if in the alternative. For example, according to the New Century assignment documents.

PM6/6/2017 2:59 PM                                          Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00

~~judgment had been assigned to New Century.~~

~~However, Pressler's collection notes, where it logs collection activities such as communications sent and received, makes no mention of the June 1, 2015 letter.   Pressler did not file a notice of substitutation and thatuntil on or about July 17, 2015.~~

~~The June 1, 2015 letter that Pressler alleges it sent to Ms. Maria misidentified the index number for the collection lawsuit, erroneously listing it as 1750.99 instead of CV-006298-12/NY.~~

~~Pursuant to a September, 2006 retainer agreement between Pressler and New Century, Pressler represented New Century in connection with the collection of the debt.~~

~~Tthe retainer agreement provides that Pressler "will substitute in as attorney of record and amend the plaintiff name, if necessary, prior to commencing collection activity." **Exhibit** , ¶ 3.~~

~~However, Pressler did not filed a notice of appearance in the collection suit until on or about July 17, 2015. Pressler has not amended the plaintiff name in the collection lawsuit to reflect the transfer to New Century.~~

~~The principles of new Century and Pressler are brothers. On information and belief, the two corporations work together hand in hand to secure and collect on consumer debts. Upon information and belief, Pressler, as New Century's law firm, is directly controlled by New Century, the debt owner. As a "client" of Pressler, New Century has the right to control Pressler in its collection attempts.~~

~~On August 22, 2016, New Century transferred its interest in the judgment to Sherman Originator III, LLC ("Sherman").. Pressler remains the attorney of record for the collection case.~~

~~Also on August 22, 2016, Sherman transferred its interest in the judgment to LVNV Funding, LLC ("LVNV"). Pressler sent Ms. Maria a notice of the transfer to LVNV On~~

9

September 7, 2016.

23.    On November 30, 2016, shortly after the filing of this federal lawsuit, LVNV transferred its interest in the judgment back to New Century.

### *Ms. Maria vacates the sewer service judgment, a fact known by Cypress and Selip*

24.28.  Ms. Maria had no knowledge of the lawsuit's existence until she saw the judgment listed on her credit report on or about May 2015.

25.29.  On May 15, 2015, Ms. Maria filed a *pro se* order to show cause in New York County Civil Court to vacate the judgment for lack of jurisdiction.

30.    Finding merit to the application, Civil Court Judge Debra Rose Samuels signed the application the same day.

26.31.  On May 13, 2015, Pressler inexplicably changed its computer system to reflect that the index number for the collection suit is 1750.99, instead of the correct index number, CV-006298-12/NY. On July 16, 2015, Pressler changed the index number in its computer system to reflect the correct number. On information and belief, communications received by Pressler between May 13 and July 16, 2017 concerning the collections suit would not be logged in the file for the collection suit due to this error.

32.    As directed by the Court, on May 19, 2015 Ms. Maria served via mail (with proof of mailing) the Order to Show Cause ("OSC") on Cypress through its attorney of record, Cohen & Slamowitz (now Selip). *See* Exhibit F.

27.

28.33.  The OSC set a hearing date of June 3, 2015. At the hearing the Court granted the application in part and issued an order setting the matter down for a traverse hearing.

34.    At the June 10, 2015 Traverse hearing the Court issued an order vacating the default

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

judgment and discontinuing the action. *See* Exhibit G.

*Cypress assigns the (non-existent) judgment to New Century*

35.     Cypress and New Century contend[5] the (putative) judgment was assigned the judgment was assigned from the former to the latter, but are inconsistent whether the transfer was before or after the judgment was vacated.

36.     The bill of sale produced by Selip and Cypress is dated January 29, 2015, months prior to the May 2015 order to show cause.  That bill of sale contends to be signed in in 2015 but the notarization of the signature is dates 2014, raisingraising questions as to its authenticity.

37.     However, the bill of sale produced by New Century in response to a third-party subpoena in this FDCPA action is dated September 1, 2015, months after the order to show cause was filed, the judgment vacated, and the case dismissed.

38.     The Bill of Sale purports to transfer all interest in the judgment to New Century, but specifically disclaims any "representations or warranties, express or implied, of any type, kind or nature." This would encompass a disclaimer as to the accuracy of a representation as to the validity of a putative assigned judgment.

39.     Oddly, Cypress and New Century executed another bill of sale on September 1, 2015. New Century produced that bill of sale in response to Plaintiff's subpoena dated April 24, 2017.

Pressler makes the remarkable assertion on June 1, 2015, in the narrow window between when Ms. Maria filed and served (on Selip) the May 20, 2015 order to show cause and the June

<div style="border-top:1px solid black; width:30%"></div>

5 This amended complaint will state that one defendant contends an activity occurred (e.g. a debt assigned on a certain date, or letter sent). Plaintiff does not stipulate that the various statements are correct. However, Plaintiff does refer to these activities as admissions by a party opponent.  These admissions support liability, even if in the alternative.  This can be seen, for example, as to the issue of whether Cypress or New Century was the assignee of the putative judgment when the order to show cause to vacate was filed, the judgment was vacated, and the case was dismissed.

10, 2015, it sent Ms. Maria a notice of assignment of the putative judgment from Cypress to New Century.  But this is belied by New Century's own bill of sale that the putative judgment account was not assigned to it until September, 2015. alleges that it sent a notice to Ms. Maria on June 1, 2015, informing her that the judgment had been assigned to New Century.

The June 1, 2015 letter that Pressler alleges it sent to Ms. Maria misidentified the index number for the collection lawsuit, erroneously listing it as 1750.99 instead of CV-006298-12/NY

Pursuant to a September, 2006 retainer agreement between Pressler and New Century, Pressler represented New Century in connection with the collection of the debt.

40.     The retainer agreement provides that Pressler "will substitute in as attorney of record and amend the plaintiff name, if necessary, prior to commencing collection activity." **Exhibit** , ¶ 3.

41.     However, Pressler did not file a notice of appearance in the collection suit until on or about July 17, 2015. Pressler has not amended the plaintiff name in the collection lawsuit to reflect the transfer to New Century.

The principles of new Century and Pressler are brothers. On information and belief, the two corporations work together hand-in-hand to secure and collect on consumer debts. Upon information and belief, Pressler, as New Century's law firm, is directly controlled by New Century, the debt owner. As a "client" of Pressler, New Century has the right to control Pressler in its collection attempts.

**New Century assigns the (vacated) judgment to LVNV**

42.     Pressler and New Century contend that, on August 22, 2016, New Century assigned the (non-existent) judgment to Sherman Originator III, LLC who, through a series of assignments, assigned the (non-existent) judgment to LVNV. Ms. Maria never received and, on information

and belief, was not sent, notice of assignment of the putative judgment, a condition precedent to being able to legally collect.

43.     Pressler remained the attorney collecting on the putative judgment.

~~According to Pressler, on~~ Pressler contends that it sent collection letter dated September 7, 2016 to Ms. Maria on attorney letterhead. The letter asserted the (vacated) judgment was now assigned from New Century to LVNV.  Pressler represented that to Ms. Maria that she owed a judgment that had in fact been vacated, and that she owed that judgment to LVNV.

On November 30, 2016, shortly after the filing of this federal lawsuit, LVNV transferred its interest in the judgment back to New Century.

~~29.~~44.  Pressler was acting as the agent of LVNV, within the course and scope of that agency.

***Pressler failed to provide the disclosures required by 1692g.***

~~30.~~45.  ~~Cypress, through~~ Pressler & Pressler ("Pressler") mailed Ms. Maria a notice of substitution of counsel form dated November 3, 2015, which was received by Ms. Maria days later. *See* Exhibit H.  The notice of substitution of counsel was signed by Selip, Pressler, and Cypress, with a signature notarization dated September 29, 2015. The cover letter to the notice was directed to the Civil Clerk, with copy to Ms. Maria. This was the first time Ms. Maria was informed that Pressler had replaced Selip as the attorney of record for Cypress in the collection case.

~~31.~~46.  The notice of substitution of counsel was the initial communication by Pressler in connection with the collection of the debt or the putative judgment. Therefore, under the

FDCPA, 15 U.S.C. § 1692g(a), Pressler was required to, within 5 days of the initial communication, provide Ms. Maria with a written notice of her rights.[6]

~~32.~~47.  Pressler's failure to provide the 1692g(a) disclosures concealed and deprived Ms. Maria of important rights conferred by Congress.[7] Most pertinent of those rights is the right to send a written dispute to force Pressler to immediately cease all collection until if and when Pressler obtains verification of the debt. Had Pressler taken even the most ministerial of steps to verify the judgment, it would have checked ecourts to see if the judgment had been vacated.

~~33.~~48.  Pressler sent several subsequent written communications in 2015 and 2016, but none of those subsequent communications disclosed to Ms. Maria her right to force Pressler to cease collections until it obtains verification of the putative debt. Instead of an honest disclosure to Ms. Maria of her rights, the subsequent written communications made a series of false representations.

***Pressler, New Century, Cypress, and perhaps Selip misrepresented the nature and amount of the putative debt ~~by~~ and seeking to collect on a vacated judgment***

~~34.~~49.  Pressler, on behalf of its client Cypress, sent Ms. Maria collection letters dated November 6, 2015 (Exhibit I) and March 15, 2016 (Exhibit J)~~,~~ and an information subpoena dated December 18, 2015 (Exhibit K).

50.     Each of the three written communications sought to collect a judgment when in fact the judgment had been vacated. The communications therefore misrepresented the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

~~35.~~51.  For example, the November 6, 201~~7~~5 letter falsely stated that "[Cypress] obtained a

---

6 The statute also allows the notice to be provided in the initial communication itself.
7 Pressler contends it sent a letter to Ms. Maria dated June 1, 2015 noting the putative assignment of the judgment to New Century, and that the letter included the 1692g notice.  There is a factual dispute as to whether the June 1 letter was sent or received by Ms. Maria. One of Plaintiff's FDCPA claims is that Pressler and New Century violated the FDCPA by failing to provide a notice to Ms. Maria of her right to dispute the (putative) judgment, and force the debt collectors to cease collection until receipt of the same.

**Formatted:** Font: 6 pt

judgment in the [collection case] on February 25, 2013, *upon which the amount of $2,448.73 is due."* (emphasis added) The letter further stated that "the judgement is valid for twenty (20) years," and that "interest will accrue on the judgement at the statutory rate which is currently nine percent (9%)," when in fact there was no judgment.

Formatted: Font: Bold, Italic

~~36.~~52.  Each of the three written communications represented an amount due that, on information and belief, inflated the amount of the debt by rolling in costs of court into the amount claimed due. However, as the judgment was vacated, there was no longer an adjudication that Cypress was entitled to costs of court. Further, not only were these un-adjudicated costs rolled into the amount claimed due, but Cypress and Pressler were seeking to collect 9% post-judgment interest on the un-adjudicated costs of court. By attempting to collect un-adjudicated costs of court, and post-judgment interest on the un-adjudicated costs, Cypress and Pressler violated the FDCPA, including 15 U.S.C. § 1692e, 1692e(2)(A) & (B), and 1692f(1).

53.    In its November 6, 2015 collection letter, Cypress and Pressler made an additional series of false representations. They represented that they could legally collect an existing judgment, and do so for the next 20 years, when the judgment was in fact vacated. They threatened to "proceed to enforce this judgment" unless "the judgment is paid in full" or an arrangement is made. The threats to engage in judgment enforcement may suggest to the least sophisticated consumer that Pressler and Cypress could, if they wished, take acts such as garnishing wages, or restraining and seizing bank accounts. The threat of judgment enforcement is a threat to the least sophisticated consumer to take an act prohibited by law given the non-existence of the judgment.[8]

~~37.~~

---

[8] Confusingly, the November 6, 2015 letter and subsequent letters represent the original creditor as Chase Bank USA. N.A.  This suggests that the collection lawsuit, the affidavit of facts, and the purported chain of title in the collection lawsuit all falsely contend that HSBC was the original creditor. *See* Exhibit L.

Formatted: Font: 6 pt

54.     As the named party in the collection suit, Cypress is charged with the knowledge of its attorneys.  As its attorney Cohen & Slamowitz (now Selip) was on notice of the OSC to vacate the judgment, Cypress is charged with that knowledge regardless of whether Selip informed it of the OSC.

38.55.  Further, Selip continued to be the attorney of record in the collections lawsuit until the notice of substitution of counsel was filed on or about November 3, 2015.

39.56. If Pressler had actual knowledge that the judgment was vacated, then it willfully attempted to collect on a known vacated judgment.

40.57. Had Cohen & Slamowitz (now Selip) misrepresented to Pressler that there was an existing, enforceable judgment then Selip is liable to Ms. Maria for misrepresenting the debt in violation of the FDCPA, most notably 15 U.S.C. § 1692e(8), which prohibits a debt collector from misrepresenting credit information to "any person."

58.     However, while such a misrepresentation, had it happened, might expose Selip to additional FDCPA liability, it would not serve as a defense for Pressler. The FDCPA is a strict liability statute.  Moreover, a common term in most agreements governing forwarding of debt collection accounts is that the forwarder either makes no representation as to the accuracy of the account information or expressly disclaims the accuracy of the information. According to New Century, the assignment with Cypress included this disclaimer.

        Pressler and CypressNew Century further attempted to collect on the vacated judgment by issuing information subpoenas, bank restraints, and execution notices to multiple financial institutions and to the NYS Comptroller.

        Specifically, CypressPressler sent an information subpoena and bank restraint to Banco Popular on November 12, 2015, and to JP Morgan Chase Bank on December 18, 2015., and sent

Formatted: Indent: Left:  0", First line:  0"

Formatted: Font: 6 pt

Formatted: Font: 6 pt

an execution notice to the NYS Comptroller on January 8, 2016.

Cypress Pressler knew and intended that Banco Popular and, Chase Bank, and the NYS Comptroller would forward the information subpoenas and execution notice with bank restraints to Ms. Maria, as required by state law. The information subpoenas with bank restraints and execution notice falsely communicated to Ms. Maria stated that the judgment was valid and that Defendants had a legal right to seize her Ms. Maria's funds.

Chase Bank and Banco Popular responded to the information subpoenas with bank restraints, providing Pressler with personal information about Ms. Maria that Pressler had no legal right to obtain.

On August 24, 2015, Pressler submitted an inquiry with the NYS Comptroller's Office of Unclaimed Funds ("Comptroller").

On December 14, 2015, in response to Pressler's August 24, 2015 inquiry the NY Comptroller reported that it was in possession of unclaimed funds belonging to Ms. Maria. The unclaimed funds were for utility service that was pre-paid but never actually furnished to Ms. Maria.

On January 8, 2016, Pressler enlisted NY Marshal Gregg Bienstock to execute on the unclaimed funds. Pressler sent an execution with notice to garnishee to Marshal Bienstock on January 8, 2016.

When it sent the execution with notice to the Comptroller, Pressler knew and intended that the Comptroller would forward the notice to Ms. Maria, as required by state law.

On February 4, 2016, the Marshal forwarded Pressler money $137.08, representing Ms. Maria's unclaimed funds.

Marshal Bienstock kept an additional $23 from the unclaimed funds as poundage. Thus,

17

**Formatted:** Font: 6 pt

**Formatted:** Font: 6 pt

the total amount unlawfully taken from Ms. Maria was $160.08.

Plaintiff mailed Pressler the complaint for this action, along with a waiver of service form, on November 10, 2017. Pressler received the summons and complaint in this action on or about NovemebrNovember 16, 2016.  Indeed, on November 16, 2016, Pressler noted on its collection notes that it had received the summons and complaint.

Yet, Pressler took no steps until February 2, 2017 to ensure that Marshal Bienstock stopped collecting on the vacated judgment.

Pressler emailed Marshal Bienstock's office on February 2, 2017 and instructed the Marshal to stop executing on the judgment. However, Pressler did not instruct the Marshal to return any monies previously collected.

On March 22, 2017, more than four months after the filing of this federal lawsuit, and nearly two years after the judgment was vacated and the case dismissed, Pressler emailed Marshal Bienstock's office and instructed the Marshal to send the $23 taken for poundage to Ms. Maria.

Even as of June 6, 2017, Pressler *still* has not returned Ms. Maria's money that Pressler seized based on a vacated judgment. The continued failure to return the money even *seven* months after being sued for collecting judgement shows a conscious disregard for Ms. Maria's rights.

41.

*Pressler misrepresented to Ms. Maria that it had performed a meaningful attorney review of collection letters, ~~and~~ information subpoena it sent to Ms. Maria, and other documents.*

~~42.~~59.  The November 6, 2015 letter was sent on attorney letterhead, as was a subsequent letter dated March 15, 2016. The letterhead boldly, in all caps listed the sender as a law firm, "PRESSLER AND PRESSLER, L.L.P. COUNSELORS AT LAW."  The entire top of the letter contained the names of over a dozen attorneys and listed offices in three states. However, neither the November 6, 2015 letter, nor the subsequent written communications included a disclaimer that no attorney has reviewed the letter or the circumstances of the putative account.

~~43.~~60.  Even more so than the two collection letters, the December 18, 2015 affirmatively represented a meaningful attorney review. It contained a physical signature of a specifically named attorney. Moreover, an information subpoena can only be issued if an attorney has considered the legal and factual basis for the issuance of a subpoena.

~~44.~~61.  As such, the November 6, 2015 and March 15, 2016 collection letters, and the December 18, 2015 information subpoena each represented to Ms. Maria and the least sophisticated consumer that an attorney had performed a meaningful review of the facts and circumstances of the consumer's putative account and the representations in the written communication.  Absent an express disclaimer of attorney involvement, an individualized meaningful attorney review is required in order for a written communication to be considered "from an attorney" within the meaning of the FDCPA, 15 U.S.C. § 1692e(3).

~~45.~~62.  However, no meaningful attorney review was performed as to any of the written communications from Pressler seeking to collect the putative judgment.

~~46.~~63.  Had Pressler performed a meaningful attorney review, it would have, for example, 1) obtained and reviewed the court file from its client, from the prior attorney, or from the

courthouse, which would contain the OSC; 2) checked the ecourts website9 to see whether an OSC was filed to vacate the default judgment and, if so, the result;[10] and 3) checked to see if Pressler had sent a 1692g notice within 5 days of its initial communication with the consumer.

~~47.~~64.  Pressler has a proven track record of failing to perform a meaningful attorney review of collection accounts. In April of 2016, Pressler entered into a consent order with the Consumer Financial Protection Bureau ("CFPB") in connection with the CFPB's finding that Pressler regularly fails to conduct a meaningful attorney review, in violation of the FDCPA. Exhibit N.

### ~~*Threat of contempt by Cypress and Pressler*~~*Pressler threats of contempt on behalf of Cypress or New Century*

~~48.~~65.  The December 18, 2015 information subpoena by ~~Cypress and~~ Pressler, under the name of Cypress,  ~~–~~contained additional false representations. (To the degree Pressler was actually acting as the agent of New Century, even though the documents only name Cypress, New Century would then be liable for the acts of Pressler).

~~49.~~66.  The December 18, 2015 ~~It~~made express representations that the judgment was valid, due and owing, and that the amount of the judgment was $2,468.65.

~~50.~~67.  The subpoena threatened Ms. Maria with the "punish[ment]" of "Contempt of Court" if

---

9 *See* https://iapps.courts.state.ny.us/webcivilLocal/LCMain

10 Attached as Exhibit M is the printout of what the free, publicly available ecourts website shows for Ms. Maria's collection lawsuit. The document shows that an OSC to vacate the judgment had been filed on May 15, 2015, that request to vacate judgment was  "Granted to Extent per Order" on June 3, 2015, and that a Traverse Hearing was held on June 10, 2015, and that the Court issued a decision on the Traverse Hearing. (A Traverse Hearing makes a determination whether service was proper.)

      While this ecourts listing does not expressly state that the judgment was vacated, any attorney reviewing this ecourts listing would see that there was a Traverse Hearing and that the Court issued a decision. Thus, the attorney would have reason to conduct further research in order to determine whether the judgment was vacated prior to attempting to collect on the putative judgment. This is especially true as to the November 6, 2015 letter threatening judgment enforcement and the December 18, 2015 Information Subpoena threatening to hold the consumer in contempt if she did not promptly answer

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

**Formatted:** Font: 6 pt

she did not serve sworn answers to the questions within seven days.

68.    Given that there was no judgment, the threat of contempt for failure to answer the information subpoena violated the FDCPA, specifically including 15 U.S.C. § 1692e(5), threatening to take an action that cannot legally be taken and 1692e(10) using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Pressler continued attempts to collect vacated judgment on behalf of Cypress or New Century.*

51.

52.    More generally however, even if there was a valid judgment, the threat of contempt would still be a threat to take an act prohibited by law. CPLR 5224(a)(3) requires that, if an information subpoena is mailed, it must be mailed "by registered or certified mail, return receipt requested."  However, Cypress and Pressler mailed the subpoena to Ms. Maria only by regular mail.

53.    Apparently Cypress and Pressler attempt to pressure consumers to make payments through (false) threats of contempt, but does not want to pay the $4.00 more it would require to make that threat enforceable.

Debt collection mills such as Pressler operate at huge volumes. It is plausible (to say the least) that if Pressler falsely threatened contempt by sending an Information Subpoena to Ms. Maria without incurring the additional fee for "registered or certified mail, return receipt requested," that she is not alone and that this conduct therefore has an impact on many consumers.

54.    Pressler contends on September 7, 2016, it sent a collection letter seekinhseeking to collect the putstiveputative judgment, and that the putastiveputative judgment was assigned to

PM6/6/2017 2:59 PM                                      Last saved6/6/2017 3:03:00 PM6/6/2017 2:58:00

another debt buyer, LVNV Funding LLC on August 22, 2016.

69.     Pressler further attempted to collect on the vacated judgment by issuing information subpoenas, bank restraints, and execution notices to multiple financial institutions and to the NYS Comptroller. (Again, these documents went out under the name of Cypress, even though Pressler may in fact have been collecting on behalf of New Century).

70.     Pressler was required to perform a meaningful attorney review before executing and serving these documents but it did not.  At a minimum, a meaningful attorney review would require checking ecourts to see if a judgment has been vacated prior to executing on the same.

71.     Specifically, Pressler sent an information subpoena and bank restraint to Banco Popular on November 12, 2015, and to JP Morgan Chase Bank on December 18, 2015.

72.     Pressler knew and intended that Banco Popular and Chase Bank would forward the information subpoenas with bank restraints to Ms. Maria, as required by state law. The information subpoenas with bank restraints falsely stated that the judgment was valid and that Defendants had a legal right to seize Ms. Maria's funds.

73.     Chase Bank and Banco Popular responded to the information subpoenas with bank restraints, providing Pressler with personal information about Ms. Maria that Pressler had no legal right to obtain.

74.     On August 24, 2015, Pressler submitted an inquiry with the NYS Comptroller's Office of Unclaimed Funds ("Comptroller").

75.     On December 14, 2015, in response to Pressler's August 24, 2015 inquiry the NY Comptroller reported that it was in possession of unclaimed funds belonging to Ms. Maria. The unclaimed funds were for utility service that was pre-paid but never actually furnished to Ms. Maria.

**Formatted:** Font: 6 pt

**Formatted:** Font: 6 pt

76.     On January 8, 2016, Pressler enlisted NY Marshal Gregg Bienstock to execute on the unclaimed funds. Pressler sent an execution with notice to garnishee to Marshal Bienstock on January 8, 2016.

77.     When it sent the execution with notice to the Comptroller, Pressler knew and intended that the Comptroller would forward the notice to Ms. Maria, as required by state law.

78.     On February 4, 2016, the Marshal forwarded Pressler money $137.08, representing Ms. Maria's unclaimed funds.

79.     Marshal Bienstock kept an additional $23 from the unclaimed funds as poundage. Thus, the total amount unlawfully taken from Ms. Maria was $160.08.

80.     Plaintiff mailed Pressler the complaint for this action, along with a waiver of service form, on November 10, 2017. Pressler received the summons and complaint in this action on or about November 16, 2016.  Indeed, on November 16, 2016, Pressler noted on its collection notes that it had received the summons and complaint.

81.     Yet, Pressler took no steps until February 2, 2017 to ensure that Marshal Bienstock stopped collecting on the vacated judgment.

82.     Pressler emailed Marshal Bienstock's office on February 2, 2017 and instructed the Marshal to stop executing on the judgment. However, Pressler did not instruct the Marshal to return any monies previously collected.

83.     On March 22, 2017, more than four months after the filing of this federal lawsuit, and nearly two years after the judgment was vacated and the case dismissed, Pressler emailed Marshal Bienstock's office and instructed the Marshal to send the $23 taken for poundage to Ms. Maria.

84.     Even as of June 6, 2017, Pressler *still* has not returned Ms. Maria's money that Pressler

23

Formatted: Font: 6 pt
Formatted: Font: 6 pt

seized based on a vacated judgment. The continued failure to return the money even *seven* months after being sued for collecting judgement shows a conscious disregard for Ms. Maria's rights.

85.    It was not until February 2, 2017 – months after Pressler signed a waiver of service for this FDCPA lawsuit -- ,that Pressler contacted the marshal toto inform them the judgment had been vacated and to cease collection activities.

Remarkably, it was not until March 27, 2017 that Pressler contacted Marshal Biegel -and return previous poundage fees.to ask for the return of the poundage fee.

86.    This delay further constitutes conversion.

***Blindly collecting or forwarding for further collection putative judgments while consciously disregarding the known risk that some of the judgments may be vacated***

55.    z

### *Damages*

56.87.   The conduct of Defendants inflicted damages on Ms. Maria. Defendants' conduct caused Ms. Maria to experience emotional and mental pain and anguish, embarrassment and humiliation.

57.88.   When she first learned of the fraudulently obtained default judgment against her, Ms. Maria was confused and frightened. When she went to court to have the judgment vacated, she had to fight through intense feelings of anxiety about going before the judge. Once the judgment was vacated Ms. Maria felt immense emotional relief, but her sense of security was shattered when Pressler tried to collect on the vacated judgment.

58.89.   Defendants' conduct caused Ms. Maria actual damages of emotional and mental pain, anguish, embarrassment and humiliation. She spent most of her nights awake and anxious. She

could not sleep, tossing and turning, and staying up worrying about what she was going to do. When she did doze off, her sleep was not restful. Ms. Maria could only sleep for 45 minutes at a time, after which she would stay up worrying for at least another 40 minutes.

59.90.  Upon receiving the information subpoena and reading the threatening language contained therein, Ms. Maria worried that her bank account would be frozen and that she would be unable to provide for herself. She was confused by the subpoena and thought that the court was angry with her and that she was at risk of being arrested. She worried about her immigration status, and cancelled a trip to her homeland because she feared it would anger the judge if she left the country. Due to her anxiety, Ms. Maria felt acute tightening in her stomach and chest. In the 15-20 days after receiving the subpoena, Ms. Maria lost several pounds.

60.91.  Not only did Defendants attempt to collect on a vacated judgment, they attempted to collect on a vacated judgement that itself was procured by the fraud of sewer service. This made Defendants' wrongful collection attempts even more outrageous and offensive.

61.92.  Ms. Maria's actual damages also include the reasonable value of her attorneys' time and expenses to: a) investigate the improper letters and information subpoena, b) verify that the underlying judgment had been vacated, c) collect documents, and d) ensure that the offending communications stop.  Ms. Maria also lost the right to the money being held in trust for her by the New York Comptroller as an unclaimed fund that Pressler executed upon without a judgment.

   **D.     COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AS TO CYPRESS, SELIP, NEW CENTURY, AND PRESSLER, AND LVNV/RESURGENT)**

62.93.  Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

63.94.  The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

64.95.  Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general."  *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.").

65.96.  The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

66.97.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

67.98.  Defendants Pressler and Selip are law firms engaged in the business of collecting debts by filing thousands of collection lawsuits on behalf of putative creditors or debt buyers; by

Formatted: Font: 6 pt

Formatted: Font: 6 pt

Last saved6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

making thousands of collection phone calls; and by sending out thousands of collection letters. Defendant regularly collects consumer debts alleged to be due to another, and that is its primary purpose. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

99.     Defendant Cypress is a debt-buyer engaged in the business of collecting debts by purchasing thousands of putative debts for pennies on the dollar and then hiring attorneys to collect on those debts. Defendant regularly collects consumer debts alleged to be due to another, and that is its primary purpose. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

68.100.     CPS and Atrash are debt collectors because, in connection with the collection of debts, they regularly execute and file, or cause to be executed and filed, false affidavits of service.

69.101.     By their conduct detailed in the above statement of facts, Defendants Cypress, Selip, CPS, Nasser Atrash, New Century, LVNV/Resurgent Cypress, Selip, and Pressler materially violated 15 U.S.C. § 1692e and 1692f.  By way of example, Defendants Cypress, Selip, and Pressler  violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; the representation or implication that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate

Last saved6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

**Formatted:** Font: 6 pt

**Formatted:** Font: 6 pt

to any person credit information which is known or which should be known to be false; using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

70.102.    Defendant Pressler also violated 1692g by failing to give the required notice of the right to dispute.

**E.    COUNT 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEO.* (AS TO CYPRESS, SELIP, ~~NEW CENTURY, LVNV, RESURGENT,~~ CPS, AND NASSER ATRASH, NEW CENTURY, LVNV/RESURGENT)**

71.103.    Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

72.104.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

73.105.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

74.106.    As enumerated above, ~~Cypress, Selip, CPS, and Nasser Atrash~~ Cypress, Selip, CPS, Nasser Atrash, New Century, LVNV/Resurgent violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses that have broad impact on consumers at large.

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

75.107.        Said Defendant's wrongful and deceptive acts caused injury and damages to Plaintiff.

76.108.        As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

### F.        COUNT 3: NY JUDICIARY LAW § 487 (AS TO SELIP)

77.109.        New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

78.110.        Defendant Selip violated § 487 by, *inter alia*, using false affidavits to obtain the sewer service judgment against Ms. Maria.

79.111.        Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by Defendant Selip, and Plaintiff so seeks.

### G.        JURY DEMAND.

59.        Plaintiff demands a trial by jury.

### H.        PRAYER

60.        WHEREFORE, Plaintiff requests the following relief:

   a.    A declaration that Defendants have committed the violations of law alleged in this action;

   b.    An order enjoining and directing Defendants to cease violating G.B.L. § 349 *et seq.*;

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM

**Formatted:** Font: 6 pt

c.   Actual damages, treble, exemplary, and punitive damages;

d.   Statutory damages under 15 U.S.C. § 1692k and GBL 349;

e.   An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k

and GBL 349;

f.   Prejudgment and post judgment interest as allowed by law;

g.   All other relief, in law and in equity, both special and general, to which Plaintiff may be

justly entitled.

Dated:  Brooklyn, New York
        June 6, 2017

Respectfully submitted,

[DRAFT]

By: _____/s/_____
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809

Formatted: Font: 6 pt

Last saved 6/6/2017 3:03:00 PM6/6/2017 2:58:00 PM6/6/2017 2:59 PM